**THE COUNTERS FIRM, P.C.**
Representation you can count on.

Lisa Counters, 016436
4809 E. Thistle Landing Drive, Ste. 100
Phoenix, AZ  85044
(602) 490-0030 (Voice)
(888) 683-8397 (Fax)
Lisa@countersfirm.com

## IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MARY and BRUCE PFAU, husband and wife,<br><br>　　　　　　　　　　　　　Plaintiffs,<br>v.<br><br>ALASKA NEUROLOGY CENTER, LLC, an Alaskan Corporation, and DOCTORS' COLLECTION SERVICE, Inc., an Alaskan Corporation,<br><br>　　　　　　　　　　　　　Defendants. | No.<br><br>**COMPLAINT**<br><br>**(JURY TRIAL DEMAND)** |

Plaintiffs Mary Pfau ("Mary") and Bruce Pfau ("Bruce") for their complaint against Defendants allege:

**PARTIES**

1. Mary and Bruce were married persons who resided in Maricopa County, Arizona from May 2009 to December 2013.

2. At all relevant times, Mary and Bruce were "consumers" within the meaning of 15 U.S.C. §1692a(2).

3. Defendant Alaska Neurology Center, LLC ("AK Neurology") is an Alaskan limited liability corporation that provided medical services to Mary when she lived in Alaska.

4. Defendant Doctors' Collection Service, Inc. ("Doctors") is, on information and belief, an Alaskan corporation that is in the business of collecting debts. Doctors' is also a licensed collection agency under Alaskan law.

5. Doctors' is a "debt collector" within the meaning of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1962a(6) and A.R.S. § (A)(2).

**JURISDICTION AND VENUE**

6. AK Neurology's actions that form the basis of this Complaint occurred in Arizona.

7. Doctors' attempted to collect from Mary while she was a resident of the state of Arizona.

8. Defendants' actions relate to Medicare regulations and claims processing.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

**GENERAL ALLEGATIONS**

10. Bruce worked for the Department of Defense. As a federal employee, Bruce was eligible for and maintained coverage through Blue Cross Blue Shield's Federal Employee Program coverage ("FEP"). As a dependent spouse, the FEP program also covered Mary.

11. Mary's FEP benefits were administered by Premera Blue Cross Blue Shield (Premera) when she lived in Alaska. After moving to Arizona Blue Cross Blue Shield of Arizona (BCBSAZ) administered Mary's FEP benefits.

12. Bruce retired from the federal government in May 2008. The Pfaus' FEP coverage, however continued as a benefit of retirement.

13. Mary moved to Arizona in May 2009.

14. Mary became disabled in 1999 under the Social Security Administration rules. Unbeknownst to Mary, she was automatically enrolled in Medicare parts A and B in 2001.

15. Medicare records indicate that neither Mary, nor any medical providers filed claims for medical treatment until after 2010.

16. It was not until December 2010, when the Pfaus visited their local Social Security office to inquire about when Mary would be eligible for Medicare, that they discovered she had been eligible since 2001.

17. Under Medicare rules, Medicare would have been the secondary payer to FEP until Bruce retired in 2008. Thereafter, Medicare would be the primary payer and Mary's FEP coverage would have been secondary.

18. Mary immediately notified BCBS in Arizona and in Alaska of the Medicare coverage.

19. Thereafter, BCBS recouped its payments as primary payer, advised the providers to reprocess their claims with Medicare as the primary insurance, and then to reprocess the claims with BCBSAZ or Premera, who would then make payments as the secondary payer.

20. Once AK Neurology learned of the recoupment from Premera, it should have resubmitted the claim as a "corrected claim" and placed the phrase "HMO Administrative Error" in Box 19 of the HCFA 1500 corrected claim form.

21. On information and belief, AK Neurology failed to follow the resubmission process or failed to properly process the claims with Medicare because AK Neurology is seeking reimbursement from Mary directly and for an amount greater than her obligation under Medicare.

22. Mary obtained counsel and attempted to resolve the matter, with no success.

**FIRST CAUSE OF ACTION**

**(Declaratory Relief)**

**(AK Neurology)**

23. Mary realleges and incorporates all of the previous allegations.

24. Section 1848(g)(4) of the Social Security Act requires that providers submit claims for Medicare patients for covered services. *See also* Medicare Billing Manual Chapter 1 § 20.1.

25. Generally a provider has one year to submit a claim for services.

26. Medicare, however, permits an extension of the time limit to file fee-for-service claims for retroactive entitlement. Medicare Claims Processing Manual § 70.7.2.

27. AK Neurology failed to follow Medicare guidelines and regulations for properly resubmitting and reprocessing their claims for Mary.

28. AK Neurology is required to accept Medicare rates for providing services to Mary.

29. By refusing to properly reprocess Mary's claims, AK Neurology precluded Mary from having her secondary insurance pay for its share of the remaining deductible and 20% co-pay permitted by Medicare.

30. In no event may Defendants bill Mary for amounts in excess of the Medicare Allowance.

31. A controversy exists between Mary and AK Neurology concerning its respective rights and duties.

32. Mary contends that Defendants must resubmit the claims to Medicare with a reason why the claims are untimely. Plaintiffs further contend if Medicare denies the claim because AK Neurology has delayed resubmission even further, then AK Neurology is limited to collecting only the Medicare co-pay from Mary pursuant to Medicare regulations.

33. AK Neurology's demand for full payment from Mary violates Medicare regulations.

## SECOND CAUSE OF ACTION
## FDCPA Violations
## (AK Neurology and Doctor's)

34. Plaintiffs reallege and incorporate all of the previous allegations.

35. AK Neurology considers Bruce equally liable for the charges related to the medical services Mary received from it.

36. By letter dated April 15, 2013, Mary advised Doctor's of the circumstances surrounding the recoupment and the billing and advised that the debt was not a valid debt.

37. Doctors' received the letter via certified mail in April 2013.

38. The letter advised Doctors' that Bruce and Mary was represented by counsel in connection with the debt.

39. Doctors' never responded to the letter.

40. On April 30, 2014, Mary's attorney, Lisa Counters, spoke with "Tina" from Doctors' collection, who advised Ms. Counters that AK Neurology rebilled Medicare, but Medicare did not pay. Tina indicated that she would contact Doctors' client and respond.

41. On November 12, 2013, Counters contacted Doctors' again and spoke with Annie, who promised she would follow up. Annie never contacted Counters.

42. On May 27, 2014, Counters contacted Doctors' and again requested that the debt be removed from Mary's Credit and that Doctors' follow Medicare regulations regarding resubmitting any unpaid claims.

43. Doctors' violated the FDCPA by contacting Mary and Bruce despite knowing that Bruce and Mary were represented by counsel.

44. Doctors' violated the FDCPA by contacting Mary and Bruce despite their requesting that Doctors' not contact them.

45. Doctors' violated the FDCPA by making false, deceptive and misleading representations about the debt to Mary and Bruce.

46. Doctors' violated the FDCPA by communicating with Bruce and Mary concerning a debt following receipt of notice that they disputed the debt.

47. Doctors' undertook to collect a non-existent debt in violation of 15 U.S.C. §1692e and f.

48. As a result of Doctors' conduct, Bruce and Mary have suffered damages, including continued damage to Mary's credit reputation and difficulty obtaining loan financing in connection with the purchase of a home.

**WHEREFORE,** Mary and Bruce request the following:

A. A judicial determination that AK Neurology is prohibited from billing Plaintiff in excess of her deductibles or co-pays pursuant to Medicare regulations;

  B. A declaration of the rights and duties of the parties under Medicare regulations;

  C. Award Plaintiffs damages as a result of Doctors' violation of the FDCPA in an amount to be proven at trial;

  D. Statutory damages pursuant to 15 U.S.C. §1692k(a)(2);

  E. Attorneys' fees and costs pursuant to 15 U.S.C. §1692k(a)(3)

  F. For reasonable attorneys' fees and costs in connection with the declaratory judgment action; and

  G. For the costs of suit; and

  H. Any other relief the Court may deem just and proper.

Dated this 20th day of November 2014.

        THE COUNTERS FIRM, P.C

        By: s/ Lisa J. Counters
          Lisa J. Counters